UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JACQUELINE LAWRENCE, et al., | Case No.: 2:16-cv-03039-APG-NJK |
| Plaintiffs | **Order Regarding Motions in Limine** |
| v. | [ECF Nos. 136, 137] |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendants | |

The parties have moved *in limine* on various grounds. The defendants (Las Vegas Metropolitan Police Department and officers Robert Bohanon, Blake Walford, and James Ledogar ) seek to exclude enhanced and slowed body-worn camera footage. ECF No. 136. They also move to limit the plaintiffs' experts' testimony to opinions related to the remaining claims and to non-legal conclusions. Additionally, they seek to limit the plaintiffs to one police practices expert. *Id.* The plaintiffs (the family and estate of Keith Childress, Jr.) seek to exclude information not known to the defendant officers at the time of the officer-involved shooting. ECF No. 137. The parties are familiar with the facts, so I repeat them here only as necessary to decide the motions.

I deny the defendants' motion to exclude the slowed-down and enhanced camera footage, as well as still shots from the video. I deny the plaintiffs' motion to exclude information unknown to the officers. I grant in part the defendants' motion regarding expert testimony, as set out in more detail below.

**I. Defendants' Motion *in Limine* Regarding Body Camera Footage**

The defendants move to exclude enhanced and slowed down body camera footage and still shots from that footage. They argue that this evidence is unduly prejudicial because it would "insinuate to the jury that the officers had more time and ability to evaluate" the situation and that likely would confuse or mislead the jury.[1] ECF No. 136 at 7. The plaintiffs respond that the footage is probative as it helps rebut the defendants' contentions that Childress's hand was not visible or that his movements continued to be threatening. The plaintiffs argue that the enhancements and still shots allow the jury to "focus on the details that would have been apparent to the officers" in person. ECF No. 154 at 2-3. They also argue that there is no prejudice to the defendants because "the jury will be told when they are viewing the enhanced videos" and will be able to compare to the real-time videos. *Id.* at 5.

Evidence must be relevant to be admissible; that is, it must have "any tendency" to make a material fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401. I may exclude relevant evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Ninth Circuit has not addressed whether the probative value of showing enhanced footage is substantially outweighed by the danger of unfair prejudice in excessive force cases. Other circuit courts have reached differing conclusions. *Compare Cunningham v. Shelby Cnty.*, 994 F.3d 761, 767 (6th Cir. 2021) (holding that the district court erred by relying on screen shots in judging the objective reasonableness of a particular use of lethal force) *with United States v. Proano*, 912

---

[1] The defendants also argue that the plaintiffs never disclosed the altered footage, but the plaintiffs provided a copy of their supplemental Rule 26 disclosures from April 30, 2019 showing that it was disclosed. ECF Nos. 154-1, 154-3.

F.3d 431, 444 (7th Cir. 2019) (holding that there was sufficient evidence to convict a police officer of willful deprivation of constitutional rights despite the prosecution's use of slow-motion video, because the jury also saw the real-time video). Another district court in the Ninth Circuit permitted showing enhanced videos to the jury with a limiting jury instruction. *See Hernandez v. City of Los Angeles*, No. 2:19-CV-00441-CAS-GJSx, 2022 WL 16551705, at *12 (C.D. Cal. Aug. 1, 2022).

Here, the probative value of the enhanced and slowed footage is not substantially outweighed by the risk of unfair prejudice. It is highly unlikely that the jury will be confused that the slowed or enhanced video and still shots are the original footage, as it will also have the real-time, unenhanced video. Additionally, a limiting instruction can mitigate the risk of unfair prejudice. Therefore, I deny this motion. I will entertain proposals for a limiting instruction regarding this evidence if the defendants wish.

**II.  Defendants' Motion *in Limine* Regarding Expert Testimony**

>    ***A.  Limiting the Substance of Plaintiffs' Experts' Testimony***

The defendants move to limit the plaintiffs' experts' testimony in several ways. In particular, they argue that almost all of Scott DeFoe and Roger Clark's opinions are no longer related to the claims that have survived summary judgment and many of their opinions are impermissible legal conclusions. The plaintiffs respond that the opinions remain relevant to the "totality of the circumstances" of the incident and their negligence claim. They argue that the experts should be permitted to testify on standard police practices and whether the defendants violated those practices. I grant this motion in part.

*1. DeFoe's opinions 1 and 2 do not appear to criticize the defendants.*

In DeFoe's opinions 1 and 2, he opines that "LVMPD Officers responded as trained . . . to contain [Childress]," and that "Sergeant Matt Campbell . . . effectively requested additional resources to transition from [apprehension to containment]." ECF No. 136 at 21.  However, the defendants contend that DeFoe opines that the officers acted unreasonably with respect to transitioning from apprehension to containment.  It appears that the defendants have misread these opinions, because DeFoe does not opine that the defendants failed to transition nor does he criticize them.  Regardless, an opinion about the defendants' supposed failure to transition per standard police practices is relevant to the remaining negligence claim and the totality of the circumstances in an excessive force analysis. *See Nehad v. Browder*, 929 F.3d 1125, 1135 (9th Cir. 2019) (holding that officer's creation of a sense of urgency can be considered as part of the totality of the circumstances).  I therefore deny the motion to exclude DeFoe's opinions 1 and 2.

*2. DeFoe's opinions 3, 4, 5, 6, 7, 8, and 11 and Clark's opinions 1, 2, 3, 4, and 6 are relevant, but they cannot be presented in the form of legal conclusions.*

The defendants argue that any opinion testimony regarding conduct that Judge Boulware already held was reasonable should not be allowed at trial as it is no longer relevant.  They concede only that an opinion about the police standards regarding the release and use of a K9 is still relevant. ECF No. 136 at 13.  The plaintiffs respond that, the excessive force claim requires a factfinder to consider the totality of the circumstances and that the remaining negligence claim "sweeps more broadly" than the remaining excessive force claim, thereby making all of the opinions still relevant. ECF No. 154 at 11.

Judge Boulware granted summary judgment to the defendants on the Fourth Amendment denial of medical care claim. ECF No. 105 at 21.  He also ruled that defendants Robert Bohanon

4

and Blake Walford's "use of lethal force for the first volley of shots was reasonable" in the context of the excessive force claim. *Id.* at 16. After analyzing facts about the information the officers knew at the time of the shooting, Judge Boulware concluded that "the Court does not find, given these facts, that Bohanon's belief that the black object in Childress's hands was a gun was objectively unreasonable. The Court subsequently also finds that Bohanon and Walford's use of lethal force was reasonable." *Id.* at 17. But he did not hold that all of the officers' actions "until the moment they fired the second volley of shots" were objectively reasonable or no longer at issue in the case, as the defendants argue. ECF No. 136 at 10.

Rather, Judge Boulware held that "there are genuine issues of fact as to whether or not the officers' actions constituted negligence." *Id.* at 22. Although he held that the first volley of shots and the denial of medical care did not violate the Constitution, he did not speak to their reasonableness under a negligence standard.[2] Thus, Judge Boulware did not grant summary judgment on any aspect of the negligence claim. That claim as pleaded in the second amended complaint covers the defendants' failure to properly assess the need to use force against Childress, negligent tactics and handling of the situation, negligent use of force, failure to provide medical care, and more. ECF No. 58 at 24-25. Therefore, testimony about the tactical error regarding the object in Childress's hand (Clark's opinion 4), the first volley of shots (DeFoe's opinions 3, 4, 6, 7; Clark's opinions 1, 2), and the lack of medical care by the officers (DeFoe's opinion 12; Clark's opinion 6) remain relevant to the negligence claim.[3] Opinions regarding the second volley of shots (DeFoe's opinions 3-8; Clark's opinions 1, 2) and the use of

---

[2] The Supreme Court of Nevada has not addressed whether the issue of reasonableness under the Fourth Amendment is identical to reasonableness under Nevada's negligence law. *Paulos v. FCH1, Ltd. Liab. Co.*, 456 P.3d 589, 595 n.2 (Nev. 2020) (en banc).

[3] If the plaintiffs choose to elicit such testimony, however, it opens the door to the defendants introducing Judge Boulware's rulings on these same issues.

5

the K9 (DeFoe's opinion 11; Clark's opinion 3) are relevant to both the negligence claim and the remaining excessive force claim.

Although these opinions are relevant, they are not permissible to the extent that they are legal conclusions. Generally, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. However, an expert witness "cannot give an opinion as to her legal conclusion." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (simplified). "[I]f the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion." *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017). Experts may opine about industry standards and how defendants may have deviated from that standard. *Hangarter*, 373 F.3d at 1016.

In their reports, DeFoe's opinions 4, 5, 7, and 8, and Clark's opinions 1, 3, 4, and 6 contain impermissible legal conclusions:

- DeFoe's opinions 4 and 7 direct the reader to the standard set out in *Graham v. Connor*, 490 U.S. 386 (1989). ECF No. 136 at 22, 26.

- DeFoe's opinions 5 and 8 conclude that the officers' "Use of Deadly Force in this matter was excessive and unreasonable . . ." with no analysis or comparison to a standard police practice. *Id.* at 23, 26.

- Clark's opinion 1 and 3 conclude that the force used by the officers "was excessive and unreasonable under the circumstances." *Id.* at 41-42.

- Clark's opinion 4 concludes that the officers "were negligent in not realizing that the object in Mr. Childress' hand was a cell phone and not a gun." *Id.* at 43.

- Clark's opinion 6 concludes that the failure to render medical aid "show a reckless indifference to Mr. Childress's life." *Id.*

At trial, the experts may testify as to the relevant standard police practices and compare the defendants' conduct with these standards. However, the experts may not testify in the form

6

of legal conclusions. Specifically, they may not use the words "reasonable," "unreasonable," or "excessive" to describe the officers' use of force, or the words "negligent" or "reckless indifference" with regard to the defendants' conduct, because these words have specialized meaning in the law.[4] In comparison, DeFoe's opinions 1, 2, 3, and 6 do not reach a legal conclusion because they discuss only standard police practices, acts consistent with those practices, and the defendants' conduct compared to such practices.

        3.  *DeFoe's opinions 9 and 13 are inadmissible because they are no longer relevant.*

DeFoe's opinion 9 about the failure to consider the background or location of the shooting is irrelevant because there are no claims relating to a third-party or property being injured, nor how the background caused Childress's injuries. DeFoe's opinion 13 about Walford's failure to turn on his body camera is irrelevant because there is no plausible causation between that failure and Childress's injuries. In their opposition, the plaintiffs do not explain (beyond a conclusory statement) why these opinions are relevant to the totality of the circumstances, nor do they identify a duty owed to Childress by the officers to consider the background or turn on their body cameras. Therefore, the experts may not opine on these topics.

        4.  *Clark's opinion 5*

The first sentence in Clark's opinion 5 (that Deputy U.S. Marshal Brian Montana's transmission "escalated the situation" and was an "ultimate factor" in the use of deadly force) is relevant to the remaining claims as it goes to what the defendants' knew at the time of the incident. ECF No. 136 at 43. However, I exclude the second sentence in this opinion that Montana was negligent or recklessly indifferent. Montana's negligence is irrelevant because he

---

[4] The plaintiffs request that I apply the same prohibition as to legal conclusions to the defendants' police practices expert. They did not file a motion requesting this relief, but the plaintiffs may object at trial to prevent the defendants' experts from proffering legal conclusions.

and the federal entities have been dismissed from the case. ECF Nos. 77; 105. Clark cannot testify at trial that Montana was negligent or recklessly indifferent.

### B. Limiting Plaintiffs to One Police Practices Expert

The defendants move to limit the plaintiffs to one police practices expert because they contend that DeFoe and Clark's opinions are duplicative. The plaintiffs respond that they "do not intend to elicit duplicative testimony from these experts" and that their "testimonies will not overlap on any specific area." ECF No. 154 at 5. In light of the plaintiffs' assurance, I deny this part of the motion without prejudice to the defendants raising the same objection at trial if the experts' testimony becomes duplicative.

### C. Summary

I grant in part and deny in part this motion as follows:

1. DeFoe's opinions 1 and 2 remain relevant and may be offered at trial.
2. DeFoe's opinions 3, 4, 5, 6, 7, 8, and 11 and Clark's opinions 1, 2, 3, 4, and 6 remain relevant. However, these opinions may not be presented as legal conclusions. The experts may testify on these issues to the extent they compare the defendants' conduct to standard police practices.
3. DeFoe's opinions 9 and 13 are not relevant to the remaining claims and may not be offered at trial.
4. Clark may offer the first sentence of his opinion 5 but he cannot testify as to the second sentence (about Montana) because it is not relevant.
5. The plaintiffs may call both Clark and DeFoe, but their testimony must not be duplicative.

### III. Plaintiffs' Motion *in Limine* Regarding Information Unknown to Officers

The plaintiffs move to exclude information not known to the defendant officers at the time of the shooting, including Childress's criminal history, related court cases, prior contacts with law enforcement, and school records. They argue that this evidence is highly prejudicial to Childress and is not relevant because in an excessive force claim, the factfinder can consider only information known to the officer at the time of the use of force. The plaintiffs also argue that this information is improper character evidence. In their response, the defendants separate this evidence into two buckets: 1) the 2015 conviction for armed robbery and flight, and 2) other criminal and educational records.

### A. 2015 Conviction and Flight

The defendants contend that evidence about Childress's 2015 conviction for armed robbery and his related flight from Arizona is relevant because it helps explain Childress's actions. In particular, they argue that this evidence makes more probable their defense that Childress intentionally provoked the officers to shoot him. They contend this evidence is not improper character evidence because it shows Childress's intent or motive. They also argue that the 2015 conviction and flight are relevant to damages because they "demonstrate [Childress's] willingness to ostracize himself from his parents and children" and that he would likely have been incarcerated for several years, hurting his familial relationships. ECF No. 153 at 9.

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In an excessive force case, "evidence in

support of [a] suicide by cop theory falls within the large exception for otherwise inadmissible character evidence carved out in Rule 404(b).  To the extent that being shot by the police was [the decedent's] plan, intent, or motive, the evidence supporting the theory of suicide by cop is admissible." *Boyd v. City & Cnty. Of S.F.*, 576 F.3d 938, 947 (9th Cir. 2009).

Evidence of Childress's 2015 conviction and related flight is therefore admissible under Rule 404(b) for the purpose of showing Childress's intent and motive.  It is also relevant to damages, as the defendants contend.  Moreover, the risk of unfair prejudice does not substantially outweigh the probative value of this evidence.  This evidence tends to make more probable the officers' defense that they were reasonable in perceiving that Childress was a threat or had a gun.  The prejudicial impact is low because the jury will presumably hear evidence that the officers believed Childress was wanted for attempted murder.  Therefore, I will allow evidence at trial related to the 2015 conviction and related flight.  I will entertain proposals for a limiting instruction advising the jury that this evidence is admissible for limited purposes, if the plaintiffs wish.

### B.  Other Criminal Records and Educational Records

The defendants contend that Childress's other criminal and educational records are relevant to damages. ECF No. 153 at 10.  Specifically, they argue these records are relevant to the closeness of the plaintiffs' familial relationship with Childress and the loss of future financial support.  They point out that in his pre-trial financial information sheet, Childress listed his monthly income as $0,00 and paid $0.00 for child support.

This evidence is probative of damages.  Moreover, convictions of obstruction and marijuana possession, and a transcript of below-average grades, are not particularly prejudicial in this case because the jury presumably will hear evidence that the officers believed Childress was

wanted for attempted murder. Therefore, I deny the plaintiffs' motion to exclude information unknown to the officers at the time of the incident. However, I will entertain proposals for a limiting instruction advising the jury that this evidence is admissible for limited purposes, if the plaintiffs wish.

## IV. Conclusion

I THEREFORE ORDER that the defendants' omnibus motion *in limine* (**ECF No. 136**) **is GRANTED in part**, as set out in this order.

I FURTHER ORDER that the plaintiffs' motion *in limine* **(ECF No. 137) is DENIED**.

I FURTHER ORDER that if the parties wish to propose limiting instructions as set out in this order, they must meet and confer and propose stipulated or alternative instructions, by May 29, 2024.

DATED this 15th day of May, 2024.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE